Argued and submitted July 17, affirmed on appeal and cross-appeal
November 13, 1991

## CHROME DATA SYSTEMS, INC.,

*v.*

## Paul H. STRINGER,
## Timothy D. Schubert and James B. Kargman,
*Respondents - Cross-Appellants,*

*and*

## Elizabeth A. PERRY,
*Defendant.*

## (A8908-04809; CA A65206)

820 P2d 831

Mark A. Turner, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Ater Wynne Hewitt Dodson & Skerritt, Portland.

Robert J. McGaughey, Portland, argued the cause for respondents - cross-appellants Paul H. Stringer and Timothy D. Schubert. Gail P. Vore, Portland, argued the cause for respondent - cross-appellant James B. Kargman. With them on the opening brief was The Law Offices of J. Milford Ford, Lake Oswego. With them on the reply brief was Parks, Allen, Livingston & Greif, Portland.

Before Richardson, Presiding Judge, and Deits and De Muniz, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The corporation appeals and the dissenting shareholders cross-appeal from the trial court's judgment in this share appraisal proceeding under ORS 60.591.[1] The trial court concluded that each of the corporation's approximately 10,000,000 shares had a value of 7 cents. The corporation contends in its appeal that the shares have a value of 2 cents, although, at trial, its appraiser placed the value at only 2/10th of a cent. It also assigns error to the award of attorney fees against it pursuant to ORS 60.594(2). The dissenting shareholders argue in their cross-appeal that the evidence showed that the value of the shares is 10 cents each.

The principal evidence offered by each side was the testimony and report of its expert appraiser, together with other testimony that was aimed at supporting or challenging one another's appraisers' assumptions and factual understandings. The corporation's appraiser placed a total value of $25,000 on the corporation. The trial court concluded that that valuation was based on faulty premises that led the appraiser to disregard relevant data. The dissenters' appraiser, Gilbert, used three valuation methods. The first was to evaluate a preliminary offer by Kelley Blue Book (Kelley), a competitor of the corporation, to buy many of its assets. Although Kelley did not couch the offer in terms of a purchase of the business, that would have been its practical effect. Kelley would not have purchased *all* of the corporation's assets, but the corporation would no longer be an operating business. The first approach resulted in a valuation of 2.9 cents per share. However, because of various factors, including the fact that the offer was preliminary and contingent, Gilbert regarded that figure as only a "floor."

His second approach was to attempt to determine the market value of the shares. That determination was based in the main on sales of stock to principals of the small corporation, their relatives and others having affiliations with the corporation. The value that emerged from that approach was 9.9 cents per share. The third method was a "projected future cash flow approach." It produced a value of 18.3 cents a share,

---

[1] The proceeding arises out of essentially the same events as in *Stringer v. Car Data Systems, Inc.,* 108 Or App 523, 816 P2d 677 (1991).

which Gilbert himself gave little weight, because he considered the approach speculative. He reconciled the three approaches by adopting the second. Essentially, his reason for doing so was that the first value was too low and the third was too high, although he did offer other reasons why he regarded the value produced by the second method as the actual fair value.

The trial court found the valuation of the Kelley offer the most persuasive of the approaches. However, the court explained that, because the value under that approach was only a floor, it found the total enterprise value to be approximately $750,000, resulting in an appraisal of 7 cents a share.

■    The corporation argues that the Kelley offer should not have been considered, because certain of Gilbert's assumptions are unsupported in the record and because the offer was preliminary and contingent and was in fact unanimously rejected by the corporation's shareholders. We do not agree that the assumptions were unsupported. We also do not agree that the fact that the offer was preliminary made it unprobative of value. The chief executive officer of Kelley testified that he would have been receptive to a counteroffer. Although the corporation was under no obligation to allow itself to be bought out, the facts that it did not negotiate further with Kelley and that the Kelley offer was preliminary in nature show, consistently with Gilbert's testimony, that the offer tended to prove the lowest possible value of the shares, not that it was irrelevant to value.

■    The dissenting shareholders agree with that conclusion but argue in connection with both the appeal and their cross-appeal that Gilbert's second approach, based on the stock sales, is a better barometer of value. The corporation responds that sales to friendly buyers are not a reliable indicator of market value. The dissenters rely, *inter alia,* on *Delaney v. Georgia-Pacific,* 42 Or App 439, 601 P2d 475 (1979), *rev den* 288 Or 519 (1980), for the proposition that an offer to buy shares in a closely held corporation for a stated amount is evidence of their market value, regardless of the offeror's motives for the amount of the offer. However, *Delaney* is not wholly analogous. Unlike the stock sales here, what was really being considered in *Delaney* was the sale of a one-half interest in the enterprise to the owner of the other

half. *Delaney* supports the view that an offer to buy the assets of a business is a good indicator of the value of the business as a whole and is very probative of the value of its shares. *See also Columbia Management Co. v. Wyss,* 94 Or App 195, 765 P2d 207 (1988), *rev den* 307 Or 571 (1989). Although we do not agree with the corporation that the stock sales could not have been considered at all, we also do not agree with the dissenters that the trial court erred by considering the Kelley offer as well as the stock sales.

■■ Appraising the value of shares can be a meld of the different approaches, and asset value, market value and enterprise value may *all* be considered, with their weight to be determined as the circumstances of the case may indicate. *See Columbia Management Co. v. Wyss, supra.* The trial court began with the Kelley offer and then reasoned that, because the approximate 3-cent value that Gilbert extrapolated from the offer was only a floor, it did not constitute the fair value of the shares. Although the court did not explain how it proceeded from there, it could have found that Gilbert's determination of value based on the stock sales was too high, but that the evidence concerning the sales was nevertheless probative of the amount by which the fair value exceeded the 3-cent figure based on the Kelley offer alone. By combining the two approaches, the court could have arrived at the 7-cent value, and the evidence supports that valuation.

■ Both parties assert that our review is *de novo.* Although some kinds of appraisal proceedings are equitable in nature, this procedure is governed by statute, and there is nothing in ORS 60.591 to indicate that the proceeding is an equitable one or that the trial court's findings are subject to *de novo* review. We need not decide what our scope of review is, however, because, in this case, the same result follows whether we review *de novo* or to determine if the court's findings have evidentiary support. If we reviewed *de novo,* we would agree with the value at which the trial court arrived, which we have also concluded is supported by the evidence.[2]

---

[2] By basing our conclusion on the evidence produced by the dissenters, we do not imply that the burden of proof was theirs. Although the question need not be decided, ORS 60.591 appears to contemplate that dissenting shareholders are entitled to receive fair value for their shares, even if they do not put on *any* evidence in an appraisal proceeding when, as here, the corporation is required to institute the proceeding. *See* ORS 60.591(1).

■      In its second assignment, the corporation argues that the court erred in awarding attorney fees against it under ORS 60.594(2).[3] There was no error.

Affirmed on appeal and on cross-appeal.

---

[3] ORS 60.594(2) provides:

"The court may also assess the fees and expenses of counsel and experts of the respective parties in amounts the court finds equitable:

"(a)  Against the corporation and in favor of any or all dissenters if the court finds the corporation did not substantially comply with the requirements of ORS 60.561 to 60.587; or

"(b)  Against either the corporation or a dissenter, in favor of any other party, if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously or not in good faith with respect to the rights provided by this chapter."