Argued and submitted December 4, 2001, affirmed July 31, 2002

**G. I. JOE'S, INC.,**
an Oregon corporation,
*Respondent,*

*v.*

Jamil NIZAM,
*Appellant.*

CCV 99-03-185; A112653

50 P3d 1282

Mark A. Turner argued the cause for appellant. With him on the briefs was Ater Wynne LLP.

David J. Sweeney argued the cause for respondent. With him on the brief were Paul G. Dodds and Brownstein, Rask, Sweeney, Kerr, Grim, DeSylvia & Hay, LLP.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

Plaintiff G. I. Joe's, Inc. brought this judicial appraisal action to determine the fair value of defendant's stock after defendant exercised his right to dissent from a proposed merger. *See* ORS 60.551 to ORS 60.594. The central factual dispute at trial was the existence of certain stock options in favor of Norm Daniels, the president of G. I. Joe's. Plaintiff presented testimony from Daniels and others that, although certain merger documents omitted any reference to the options, that omission was inadvertent and the options did, in fact, exist. Defendant, relying exclusively on those merger documents, argued that the options did not exist and that, even if they did, Daniels was contractually precluded from exercising them. The trial court believed plaintiff's witnesses, concluded that the options did exist at the time of the merger, and valued defendant's shares accordingly. Defendant now appeals, arguing that the trial court erred in that conclusion. We affirm.

The undisputed facts reveal that the proposed merger that gave rise to defendant's right to dissent pursuant to ORS 60.554 was one part of a multi-part transaction, the purpose of which was to allow Daniels to acquire majority control of G. I. Joe's by buying out the previous majority shareholder. The transaction took place in three parts. First, the company attempted to redeem all of its outstanding shares, except those held by Daniels, who would then own a majority of the company's shares. Second, Daniels created a holding company called N.D. Holdings, Inc., to temporarily hold all of Daniels's shares as well as $9.5 million in subordinated debenture notes issued by G. I. Joe's to partly finance the stock redemption. Finally, N.D. Holdings and G. I. Joe's merged, giving Daniels majority control of the new G. I. Joe's corporation.

All shareholders were given the opportunity to redeem their shares. Before the redemption, Daniels owned 92,330 shares of G. I. Joe's stock. Daniels kept his shares as part of his plan to gain majority control of the company. Defendant and another shareholder (Lindquist) did not redeem their shares. At the end of the first stage of the transaction, therefore, Daniels, Lindquist, and defendant were the

only remaining shareholders, with Daniels owning a majority of the outstanding shares. After acquiring majority ownership, Daniels formed N.D. Holdings, which then held Daniels's stock and the notes, thus completing the second stage of the transaction.

The third stage, when N.D. Holdings and G. I. Joe's merged into one company, required shareholder approval. Daniels and Lindquist voted in favor of the merger; defendant dissented. Thereafter, pursuant to ORS 60.554, plaintiff determined that the fair value of defendant's 18,720 shares plus accrued interest was $153,756.81; plaintiff then tendered that amount. Defendant countered by asserting that the fair value of his shares was $203.95 per share, for a total of $3,818,000.

In light of that dispute, plaintiff instituted this appraisal proceeding pursuant to ORS 60.591. That statute provides that, when a demand for payment pursuant to ORS 60.587 remains unsettled, the corporation "shall commence a proceeding" and petition the court "to determine the fair value of the shares and accrued interest." ORS 60.591(1). The court may then appoint an appraiser to assist in valuing the shares. ORS 60.591(4). Here, the court appointed Corporate Valuation, Inc. Because the parties could not agree about the existence of Daniels's stock options, Corporate Valuation prepared alternative appraisals, one including and the other disregarding Daniels's options.

The case then went to trial, where the central dispute was the existence of Daniels's options. Plaintiff presented testimony that the options existed at the time of the merger but that, through inadvertence, plaintiff's counsel failed to reference the options in any of the merger documents. Specifically, plaintiff's chief outside counsel testified that the options existed up to the point of the merger, although Daniels had agreed to surrender them at the time of the merger as part of his consideration for acquiring majority control of the company. The merger was a "rush job." While he was preparing for the merger, plaintiff's corporate counsel focused on how G. I. Joe's capital structure would look as of the effective date of the merger, not the date relevant to the fair value of defendant's shares, which was immediately

before the merger.[1] The merger documents therefore made no reference to Daniels's options, which were to disappear simultaneously with the completion of the merger. Plaintiff elicited similar testimony from G. I. Joe's chief financial officer, its accountant, and Daniels. The main thrust, then, of plaintiff's evidence was that the options existed as of the date relevant to determining the fair value of defendant's shares despite the fact that the merger documents did not reflect their existence.

Defendant did not present any witnesses to refute plaintiff's evidence. Rather, defendant's evidence consisted of a number of exhibits, most of which were the merger documents that failed to disclose Daniels's options. Based on what defendant calls that "unambiguous" documentary evidence, he urged the trial court to disregard the testimony offered by plaintiff's witnesses as self serving and to conclude, based on the documentary evidence, that the options did not exist. Additionally, defendant argued that, even if the options did exist, Daniels was precluded by the merger agreement from exercising them, so they should not be considered in determining the fair value of defendant's shares.

The trial court found that Daniels "held written stock options entitling him to purchase an additional 291,500 shares of G. I. Joe's stock"; that certain of the merger documents "failed to include the Daniels options"; that "this was an error committed by the company's principal outside attorney"; and that "Daniels was not contractually precluded from exercising the options." The court separately concluded that "the evidence overwhelmingly supports the finding of the existence of the options." Consistently with its factual findings, the trial court took those options into account when it calculated the value of defendant's shares, ultimately concluding that defendant's shares were worth a total of $160,618. Consequently, the trial court entered a money judgment in favor of defendant in the amount of $6,861 plus interest. On appeal, defendant assigns error to the trial court's determination of the fair value of his shares. Specifically, defendant renews his arguments that the options did

---

[1] ORS 60.551(4) defines "fair value" as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects."

not exist and that, if they did, they nevertheless should not be included in valuing defendant's stock, because Daniels was precluded by the merger agreement from exercising them.

■     Defendant's argument regarding the existence of Daniels's options is principally factual—he asserts that the trial court erred in disregarding the merger documents, which failed to disclose the options, in favor of the testimony of plaintiff's witnesses. Before we reach the merits of that argument, we must first determine our standard of review for factual issues in judicial appraisal proceedings. Defendant, relying on *Hayes v. Olmsted & Associates, Inc.*, 173 Or App 259, 21 P3d 178, *rev den* 333 Or 73 (2001), argues that this matter is equitable in nature and that our review is *de novo*. Plaintiff responds that this special statutory action is legal in nature and that we may not disturb the trial court's factual findings if there is any evidence in the record to support them. *See generally Chrome Data Systems, Inc. v. Stringer*, 109 Or App 513, 517, 820 P2d 831 (1991).[2]

Generally, our review of facts determined in the trial court is governed by ORS 19.415, which states, in part:

"(1)   Upon an appeal from a judgment in an action at law, the scope of review shall be as provided in section 3, Article VII (Amended) of the Oregon Constitution.[3]

"* * * * *

"(3)   Upon an appeal from a decree in a suit in equity, the Court of Appeals shall try the cause anew upon the record."

---

[2] In *Chrome Data Systems, Inc.*, we noted but did not resolve the question of the appropriate standard of our review in appraisal proceedings under ORS 60.591. There, we concluded that the result would be the same whether we reviewed the record *de novo* or tested the trial court's findings for any evidentiary support. *Chrome Data Systems, Inc.*, 109 Or App at 517. Here, likewise, we would reach the same result even if our review were *de novo*. Nevertheless, we resolve the question of the appropriate standard of review because the question is a recurring one.

[3] Article VII (Amended), section 3, of the Oregon Constitution, provides, in part, that

"no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

*See also* ORCP 62 F (in an action tried to the court, trial court's factual findings are entitled to same deference as jury verdict).

The initial question, then, is whether a judicial appraisal proceeding is in the nature of an action at law or a suit in equity.

■ When the legislature does not expressly provide a standard of review in a statutory action, we determine the standard by examining " 'the essential nature of the case, including the nature of the relief sought.' " *Hanzo v. deParrie*, 152 Or App 525, 536, 953 P2d 1130 (1998), *rev den* 328 Or 418 (1999) (quoting *State Farm Fire v. Sevier*, 272 Or 278, 299, 537 P2d 88 (1975)). ORS 60.591 provides that, if a dissenting shareholder's demand for payment "remains unsettled," the corporation "shall commence a proceeding * * * and petition the court * * * to determine the fair value of the shares and accrued interest." The statute further provides that each dissenter is entitled to judgment for "[t]he amount, if any, by which the court finds the fair value of the dissenter's shares, plus interest, exceeds the amount paid by the corporation." ORS 60.591(5)(a). In other words, the court's powers under ORS 60.591 are limited to determining the fair value of the stock and awarding a money judgment in the amount of the difference between what the corporation paid the dissenting shareholder and the amount to which the court determines that shareholder is entitled. Relief in the form of a money judgment is a traditional legal remedy. *Amer. Timber/ Bernard v. First Nat'l*, 263 Or 1, 11, 500 P2d 1204 (1972) (request for money judgment is legal, not equitable); *see also Pantheon Construction & Design, Inc. v. Neuman*, 166 Or App 172, 185, 999 P2d 1196 (2000) (legal remedies include money damages). Consequently, for the purpose of determining our standard of review, a judicial appraisal proceeding is legal, not equitable, in nature.

■ *Hayes* is not to the contrary. There, the parties disputed the "fair and reasonable price" of the plaintiff's shares of stock in a statutory action seeking corporate dissolution under ORS 60.661. *Hayes*, 173 Or App at 276. We reviewed *de novo* the trial court's factual findings. *Id.* Here, defendant reasons that, because the trial court was similarly charged with determining "the fair value of dissenter's shares," ORS 60.591(5)(a), our review should also be *de novo*. Because the two statutes, ORS 60.591 and ORS 60.671, authorize trial courts to award different forms of relief, defendant's reliance on *Hayes* is misplaced.

As stated above, when the legislature does not expressly provide a standard of review in a statutory action, we focus on " 'the essential nature of the case, including the nature of the relief sought.' " *Hanzo*, 152 Or App at 536. Under ORS 60.671, the provision that was at issue in *Hayes*, the trial court is authorized to enter only a decree of dissolution. In light of the relief available under that statute, a judicial dissolution proceeding under ORS 60.661 is equitable in nature and we review *de novo* the trial court's factual findings. *See Jackson v. Nicolai-Neppach Co.*, 219 Or 560, 574, 348 P2d 9 (1959) (construing prior version of ORS 60.661 as providing equity jurisdiction over corporate dissolution proceedings). In contrast, as stated above, the court in a judicial appraisal proceeding brought under ORS 60.591 is authorized to award money damages, a traditional legal remedy. Our review, then, is limited to examining the record to determine if there is any evidence to support the trial court's factual findings.[4] ORS 19.415(1); Or Const, Art VII (Amended), § 3; ORCP 62 F (in an action tried to the court, trial court's factual findings are entitled to same deference as jury verdict).

∎    Here, defendant argues on appeal that the trial court should have given weight to the merger documents, which failed to disclose the Daniels options, rather than to the witness testimony that the options existed and were inadvertently omitted from those documents. In other words, defendant is inviting us to revisit the factual controversies already decided by the trial court. In light of our standard of review, we do not do so. The sole inquiry is whether there is evidence in the record to support the trial court's findings. As recounted above, the witness testimony supports the trial court's finding that the options existed. Accordingly, we will

---

[4] The remedy provided under Oregon law typifies judicial appraisal proceedings generally. As one treatise notes:

"In-court appraisal proceedings have been characterized as legal, as opposed to equitable actions, because of their historical limitation of the dissenting shareholder to the legal remedy of damages, in the amount of the value of that shareholder's stock."

William Meade Fletcher, 12B *Fletcher Cyclopedia of the Law of Private Corporations* § 5906.10 (2000) (citing cases).

not disturb those factual findings on appeal. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984).

■    Defendant also renews his argument that, even if the options existed, Daniels was "contractually prohibited" from exercising them as a condition of the merger. Defendant's argument, as we understand it, is that by signing the merger agreement, Daniels "warranted" that only 112,550 shares of G. I. Joe's stock would exist on July 15, 1998 (the effective date of the merger) and that no outstanding options existed as of July 1, 1998 (the date of the merger agreement itself).

We need not determine whether defendant is correct that the merger agreement effectively contains such "warranties." Even if that characterization is correct, any such warranties would not mean that the options do not exist. At most, the existence of the options notwithstanding the "warranties" in the merger agreement might be a basis for a breach of contract action against Daniels by a party to the merger agreement, which defendant is not. The fact remains that, in light of the trial court's amply supported factual findings, the options existed on the date on which the fair value of defendant's shares was to be determined. The trial court therefore correctly took the options into account in determining the fair value of defendant's shares.

Affirmed.