Argued and submitted June 1, 2021, affirmed October 12, 2022

Clarka HILL
and Matthew Gold,
individuals,
*Plaintiffs-Appellants,*

*v.*

Steven GOLD,
as an individual and as Trustee
of the Steven L. Gold Revocable Trust;
Joseph Gold, as an individual and as Trustee
of the Joseph D. Gold Revocable Trust;
and Gold Hill Properties, Inc.,
an Oregon corporation,
*Defendants-Respondents.*

Washington County Circuit Court
19CV13720; A172944

519 P3d 543

Plaintiffs appeal from a general judgment and money award entered in this ORS 60.952(1) shareholder proceeding that required the sale and purchase of their interests in Gold Hill Properties, Inc. (GHP), a closely-held family corporation. Plaintiffs assert four assignments of error, two of which the Court of Appeals discusses: (1) GHP was without authority to elect to purchase plaintiffs' interests in GHP and (2) the trial court erred in its calculation of fair value. *Held*: GHP's election was authorized, and the trial court did not err in accepting that election. The trial court did not err when it considered fair market value as relevant to fair value, and it did not err when it applied a marketability discount in its calculation of fair value on this record.

Affirmed.

Janelle F. Wipper, Judge.

Helen C. Tompkins argued the cause and filed the briefs for appellants.

Susan K. Lain argued the cause for respondent Gold Hill Properties, Inc. Also on the brief was Hohbach Law Firm LLC.

Matthew J. Yium and Foster Garvey PC filed the brief for respondents Steven Gold and Joseph Gold.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

MOONEY, P. J.

Affirmed.

_____

* Pagán, J., *vice* DeHoog, J. pro tempore.

## MOONEY, P. J.

This appeal involves a dispute between Clarka Hill and Matthew Gold (plaintiffs) and Steven Gold and Joseph Gold (individual defendants) who are siblings that own equal shares in Gold Hill Properties, Inc. (GHP), a closely-held family corporation. Plaintiffs appeal from the general judgment and money award that required the sale and purchase of their respective interests in GHP.

Plaintiffs initiated a shareholder proceeding when they filed a complaint in the circuit court for declaratory relief and other remedies under ORS 60.952(1). The complaint alleged deadlock and oppression and sought various declarations and remedies under ORS 60.952(2) that would provide relief from the deadlock and order the sale of GHP stock.[1] In response, GHP filed an ORS 60.952(6) notice of election to purchase each plaintiff's respective 25 percent interest in GHP.[2] Because the parties did not agree to the fair value of those interests or to the purchase terms, those issues were determined by the trial court under ORS 60.952(5)[3]

---

[1] ORS 60.952(1) provides, as relevant:

"In a proceeding by a shareholder in a [closely held] corporation *** the circuit court may order one or more remedies listed in subsection (2) of this section if it is established that:

"(a) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock;

"(b) The directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent;

"(c) The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired; or

"(d) The corporate assets are being misapplied or wasted."

[2] The individual defendants also filed notices of election under ORS 60.952(6), but their offers to purchase plaintiffs' shares in GHP were made contingent in the event that GHP did not purchase those shares.

[3] ORS 60.952(5) provides, as relevant:

"(a) If the court orders a share purchase, the court shall:

"(A) Determine the fair value of the shares, with or without the assistance of appraisers, taking into account any impact on the value of the shares resulting from the actions giving rise to a proceeding under subsection (1) of this section;

by operation of ORS 60.952(6)(f), upon GHP's application for a stay under ORS 60.952(6)(f).[4]

The trial court conducted a valuation trial and, thereafter, made findings and concluded that the fair value of each plaintiff's 25 percent interest in GHP was $437,600. It ordered plaintiffs to sell, and GHP to purchase, those interests at that price on certain terms over a period of time. Plaintiffs appeal from the general judgment and money award that required the sale and purchase of their respective interests in GHP to GHP on those terms.

Plaintiffs raise four assignments of error. We begin by rejecting the third assignment concerning the "Hill house," described below, without discussion, and also reject the fourth assignment, generally claiming an unfair result, because that assignment does not comply with the requirements of ORAP 5.40. With respect to the first assignment, that GHP was without authority to elect to purchase plaintiffs' interests, we conclude that the election was authorized and that the trial court did not err in accepting that election. As to the second assignment, challenging the trial court's calculation of fair value, we conclude that the court's consideration of fair market value as evidence of fair value and its

---

"(B) Consider any financial or legal constraints on the ability of the corporation or the purchasing shareholder to purchase the shares;

"(C) Specify the terms of the purchase, including, if appropriate, terms for installment payments, interest at the rate and from the date determined by the court to be equitable, subordination of the purchase obligation to the rights of the corporation's other creditors, security for a deferred purchase price and a covenant not to compete or other restriction on the seller;

"(D) Require the seller to deliver all of the seller's shares to the purchaser upon receipt of the purchase price or the first installment of the purchase price; and

"(E) Retain jurisdiction to enforce the purchase order by, among other remedies, ordering the corporation to be dissolved if the purchase is not completed in accordance with the terms of the purchase order."

[4] ORS 60.952(6)(f) provides:

"If the parties are unable to reach an agreement as described in paragraph (e) of this subsection, the court, upon application of any party, shall stay the proceeding under subsection (1) of this section and shall, under subsection (5) of this section, determine the fair value and terms of purchase of the shares of the shareholder who filed the proceeding as of the day before the date on which the proceeding was filed or as of such other date as the court deems appropriate under the circumstances."

application of a marketability discount in calculating fair value on this record was not error. Therefore, we affirm.

## I.   STANDARD OF REVIEW

The question whether GHP had the authority to make an election under ORS 60.952(6) and whether the trial court properly accepted GHP's election is a question of law that we review for legal error.

Our standard of review for factual issues in judicial valuation proceedings is that we do not reexamine any fact tried by the factfinder—whether a jury or the court—unless there is no evidence to support that fact. Or Const, Art VII (Amended), § 3; ORS 19.415(1); *see G. I. Joe's, Inc. v. Nizam*, 183 Or App 116, 122, 50 P3d 1282 (2002) (concluding that judicial appraisal proceedings are legal, rather than equitable, and applying the Article VII (Amended), section 3, standard). Plaintiffs argue that "this is an extraordinary case due to complexities of the corporate transactions and related corporate finance," and they ask us to conduct *de novo* review of the trial court's factual findings on the question of fair value. But this is not an equitable case, and *de novo* review is not available. ORS 19.415(3)(b). In any event, the presumption against the exercise of discretion to conduct *de novo* review has not been overcome because this is not an "exceptional" case for purposes of ORAP 5.40(8)(c). Therefore, we review the court's calculation of fair value for any evidence to support the court's finding.

## II.   BACKGROUND

As noted earlier, GHP is owned in four equal shares by the plaintiffs and individual defendants, who are siblings. GHP owns farmland that it leases to a related family business—Gold Hill Enterprises, Inc. (GHE)—which is owned by the individual defendants—Steven and Joseph. GHE operates a wholesale nursery business on the property it leases from GHP. Plaintiffs—Clarka and Matthew—have no ownership interest in GHE.

The Gold family has been in the wholesale nursery business in Washington County since 1965 when the siblings' grandfather and his two sons started the business.

The business was incorporated in the early 1970s and although the corporate structure and ownership interests have changed over the years, it has remained a family-owned nursery business. Each of the four siblings continues to own a 25 percent interest in GHP and serves on the GHP board of directors. Steven and Joseph each own 50 percent interests in GHE, and they serve on GHE's board of directors. Steven is president of both GHP and GHE.

In 2007, Clarka Hill and her husband, Jim Hill, obtained a loan from, and executed a lease agreement with, GHP so that they could build a house on the land leased from GHP. The terms of the agreement included an annual rental rate of $1 for a term of 99 years. The house was built, but the loan was not yet paid off, and the Hills no longer lived at the house by the time the complaint in this case was filed.

There were concerns raised in 2015 about whether the rent paid by GHE to GHP for the farm property on which GHE operates its nursery business was too high and whether that arrangement would pass IRS scrutiny should GHP or GHE be audited. A comparative study of rental rates was done, which yielded a broad range of rates in the area. The following year, GHP and GHE executed a "Farm Lease and Maintenance Agreement." Under its terms, GHE agreed to pay $530,879.28 per year as rent for a term of 10 years and to pay a separate maintenance fee. Subsequently, the parties entered into an amended lease agreement which reduced the annual rent to $483,879.00 for a term of 10 years, beginning January 1, 2018.

In 2018, GHP and GHE hired a new accounting firm to advise both companies on financial and tax matters. In October of that year, a certified public accountant from that firm, David Buck, sent the individual defendants a letter expressing his concern that GHP and GHE could be audited by the IRS and that there could be tax-related consequences if the rent paid by GHE were above fair market value. Buck ultimately recommended that a rent study be performed by "an independent expert."

The individual defendants presented Buck's letter to GHP's board of directors, including plaintiffs, and recommended that they proceed with a new rent study. Plaintiffs

opposed obtaining a new rent study, and the individual defendants favored getting one, resulting in an impasse. The GHP deadlock in this case was triggered by that disagreement.

After GHP became deadlocked, plaintiffs offered to sell 100 percent of their respective 25 percent interests in GHP to GHP, to the individual defendants, or to both, for $1 million each with a requirement that the buyer purchase the Hill house for $750,000, less the outstanding loan balance owed GHP. Upon receipt of that offer, future GHP board meetings were canceled, and the individual defendants held an emergency meeting, exclusive of plaintiffs, to consider plaintiffs' offer.

On January 24, 2019, corporate counsel for GHP sent plaintiffs a letter stating that "GHP and/or Steve and/or Joe do intend to purchase" their shares, but that the terms of the offer were "not acceptable." The letter invoked GHP's stock purchase agreement (SPA) which, given the disagreement about purchase price, required a neutral arbitrator to determine the fair market value of the shares. Appraiser Daniel Gilbert was engaged to "perform a limited appraisal of a 25.0% interest" in GHP. Among other things, Gilbert concluded that the fair market value of a 25 percent interest in GHP was $437,600, after applying a 22 percent marketability discount.

On March 25, 2019, plaintiffs filed the underlying action in this case when they filed their complaint alleging deadlock and oppression. Importantly, plaintiffs did not and do not dispute that the filing of that complaint constituted the filing of a proceeding under subsection (1) of ORS 60.952. GHP and the individual defendants filed timely buyout notices under ORS 60.952(6). Plaintiffs sent a new offer to sell their respective GHP shares to GHP or to the individual defendants for $800,000 each. That offer was not accepted, and the parties were unable to agree to price and terms. GHP then applied for a stay under ORS 60.952(6)(f), which triggered a stay of plaintiffs' claims and shifted the court's role and focus to that of determining fair value and terms of sale under ORS 60.952(5).

At the valuation trial, plaintiffs presented evidence of the value of GHP's real property, equipment, and other assets through its expert witnesses Stacy Hasson and Rick Herman. Neither Hasson nor Herman testified to the value of plaintiffs' equitable interests in GHP. Defendant GHP presented evidence of the value of a 25 percent interest in GHP through its expert Dan Gilbert. As already mentioned, Gilbert discussed fair market value and, among other things, applied a marketability discount of 22 percent in his valuation. The trial court issued extensive written findings of fact and conclusions of law. Among other things, it concluded that the parties "are in a deadlock as to the business and affairs of GHP under ORS 60.952(1)," and that the "[n]otice of [e]lection filed by GHP [was] validly filed upon the direction of its President, Steven Gold" following the shareholder deadlock. The court accepted the buyout elections filed by GHP and the individual defendants. With respect to its determination of the fair value of plaintiffs' interests in GHP, the court concluded:

> "The only evidence presented as to the value of Plaintiffs' shares on the day before the date on which the proceeding was filed was that presented by GHP. The Court finds the GHP witnesses to be highly skilled, experienced, and credible. The evidence presented at trial regarding the appraised value of the Plaintiffs shares in the corporation is the best and most current available information. The Court therefore accepts the value presented by Dan Gilbert, CPA / ABV, OVA, OFF at $437,600 each as the fair value for 100% of each of Plaintiffs' shares in GHP."

The court concluded that plaintiffs were not oppressed by GHP or by the individual defendants, and that it was, therefore, appropriate for a marketability discount to have been used in calculating the fair value of plaintiffs' shares. Ultimately, the court adopted Gilbert's valuation as "fair value," and it ordered GHP to purchase each plaintiff's shares for $437,600 to be paid over a period of time on terms that it set forth in the judgment. The court declined to address the disposition and ownership of the Hill house as part of the proceedings.[5] This appeal followed.

---

[5] As noted, we reject plaintiff's assignment of error with respect to that issue without discussion.

## III.   ANALYSIS

A.   *GHP's ORS 60.952(6) Election to Purchase Plaintiffs'*
     *GHP Stock*

Plaintiffs challenge the trial court's acceptance of GHP's notice of election to purchase plaintiffs' GHP shares because, according to them, the notice was "void and a nullity." They contend that, at the time of the filing of the notice, GHP was unable to take any binding corporate action because, as the trial court found, plaintiffs and individual defendants had been deadlocked in the management of GHP's business affairs for months. In support of that contention they point to GHP's bylaws, which require a majority of directors to conduct business and a majority vote to make decisions about business.

The directors and shareholders of GHP are deadlocked. Of that there is no doubt. Even if this case had proceeded solely under ORS 60.952(1), the circuit court would have been authorized under ORS 60.952(2)(k) to order, among other things:

> "[t]he purchase by the corporation or one or more shareholders of all of the shares of one or more other shareholders for their fair value and on the terms determined under subsection (5) of this section[.]"

Plaintiffs' argument, that the election provisions are not available to GHP because GHP is deadlocked, ignores the plain language of ORS 60.952(6) that permits "the corporation or one or more shareholders," when faced with an ORS 60.952(1) claim and trial, to elect to buy the stock of the shareholder(s) who filed the claim rather than to litigate the merits of the claim. Plaintiffs' argument is directly at odds with the purpose of the election provision, which is to provide "an incentive for shareholders to resolve their disputes" short of a full ORS 60.952(1) trial and to provide "a shortcut to a remedy" when litigation arises between shareholders in a close corporation. *Graydog Internet, Inc. v. Giller*, 362 Or 177, 196, 406 P3d 45 (2017). "Reducing litigation between shareholders in close corporations is desirable policy because it protects the firm, its employees, and other stakeholders from the consequences of extended litigation." *Id.* Corporate

formalities in this deadlocked family corporation are no longer possible. Plaintiffs, in fact, initiated this proceeding under ORS 60.952(1) because of the deadlock. It was the initiation of the shareholder proceeding that authorized GHP to make a buy-out election under ORS 60.952(6), and the trial court was authorized to accept GHP's notice of election.

B.  *Calculating Fair Value of Plaintiffs' GHP Stock*

Plaintiffs contend that "fair value" under ORS 60.952 is not the same as "fair market value" and that it was error for the court to use the opinion of GHP's expert witness, Gilbert, as to the fair market value of the stock in reaching its conclusion as to the fair value of the stock. Defendants respond that fair value "includes consideration of fair market value," and that the trial court correctly considered Gilbert's testimony as evidence of fair value. Plaintiffs also argue that Gilbert's valuation was flawed because he applied a minority discount as well as a marketability discount.[6] Defendants disagree, arguing that the discount was appropriate given GHP's status as "a small family-run business" that does not enjoy the same "ready market" that "publicly traded shares" enjoy.

We have previously addressed the meaning of "fair value" under the dissenter's rights provisions of ORS chapter 60.[7] We are aware of no argument that the general purposes served by the shareholder protection provisions of that chapter are different for a dissenting shareholder than for a shareholder in a deadlocked close corporation. Indeed, plaintiffs and defendants cite *Columbia Management Co. v. Wyss*, 94 Or App 195, 765 P2d 207 (1988), *rev den*, 307

---

[6] Although plaintiffs argue that "neither [a minority discount nor a marketability discount] was appropriate on these facts," the scope of our review is limited to determining whether the marketability discount was lawful because, as defendants correctly point out, Gilbert did not discount their shares for minority control.

[7] We acknowledge that ORS 60.551(4) defines "[f]air value, with respect to a dissenter's shares" as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." *Columbia Management Co. v. Wyss*, 94 Or App 195, 765 P2d 207 (1988), *rev den*, 307 Or 571 (1989) is nevertheless relevant because it addresses the substantive meaning of "fair value" rather than the point in time statutorily fixed for the assessment of that value.

Or 571 (1989), a dissenter's rights case, for the proposition that fair value *in this case* of deadlock in a close corporation depends on the particular circumstances presented.[8] We noted that other states with statutes that use "fair value" as the standard for calculating the price for a dissenting shareholder's stock, all require consideration of (1) market value, (2) net asset value, and (3) earnings or investment value. *Columbia Management Co.*, 94 Or App at 199. We likewise concluded that although "there are no hard and fast rules" for determining fair value, it "must take into account the *various approaches* to evaluating corporate assets, earnings and business prospects without regard to the events that triggered the dissent." *Id.* at 202 (emphasis added). We also held that because of the "illiquidity" of the shares of a closely held corporation, "the trial court correctly applied a marketability discount." *Id.* at 197.

In *Chiles v. Robertson*, 94 Or App 604, 643-44, 767 P2d 903, *adh'd to as modified on recons*, 96 Or App 658, *rev den*, 308 Or 592 (1989), we concluded that a marketability discount was inappropriate where we found that the majority had engaged in oppressive conduct. 94 Or App at 643-44. We explained that, where a court orders the purchase of shares in a close corporation as a remedy for oppression, the purchase "is not a sale by a willing seller to a willing buyer" and that the wrongdoer "should not benefit from reductions in value that are based on such a sale." *Id.* at 643. In a subsequent case, we reaffirmed that a marketability discount is inappropriate in light of oppressive conduct and discussed the distinction between "fair value" and "fair market value":

> "[B]ecause defendants must purchase plaintiff's shares as a remedy for their misconduct, and the price for plaintiff's shares is therefore based on their fair value rather than their fair market value, either a minority or marketability discount would be inappropriate."

*Cooke v. Fresh Express Foods Corp.*, 169 Or App 101, 115, 7 P3d 717 (2000).

---

[8] In *Columbia Management Co.*, 94 Or App at 197, we examined the "fair value" of a dissenting shareholder's stock under *former* ORS 57.865 to 57.890, *repealed by* Or Laws 1987, ch 52, § 181, the precursors to ORS 60.551 to 60.594, which continue to use the phrase "fair value."

Here, the trial court ultimately found that there had been no oppression. The court noted that plaintiffs filed their complaint alleging that defendants had oppressed them and that corporate waste was occurring and requested a sale of GHP stock. The court explained its view of the valuation evidence:

> "The court allowed Plaintiffs to adduce evidence that they were oppressed by acts of Joseph Gold and/or Steven Gold. The evidence introduced by Plaintiffs, both through testimony and exhibits, did not adequately meet their burden of proof supporting their allegations of oppression, such as fraud, bad faith or breach of fiduciary duty."

The court defined the sole issue before it as the fair value and terms of sale for the GHP stock owned by the shareholders who filed the case. GHP's election to purchase plaintiffs' GHP stock and its subsequent request for a stay given the parties' inability to reach agreement on price and terms, narrowed the scope of the trial to the determination of fair value and the terms of purchase. ORS 60.952(6)(f). And contrary to plaintiffs' position on appeal, oppression remained an issue because it was relevant to fair value. Plaintiffs sought to establish that the 22 percent marketability discount applied by Gilbert should not be applied *because plaintiffs were oppressed by defendants*. Defendants sought to establish that the 22 percent marketability discount should be applied because Plaintiffs were *not* oppressed by them.

We agree that oppression is relevant to the determination of fair value. *Compare Columbia Management Co.*, 94 Or App at 197, 203 (marketability discount applies when no oppression), *with Hayes v. Olmsted & Associates, Inc.*, 173 Or App 259, 276, 21 P3d 178, *rev den*, 333 Or 73 (2001) (no marketability discount when oppression). In *Hickey v. Hickey*, 269 Or App 258, 274 n 8, 344 P3d 512, *rev den*, 357 Or 415 (2015), we observed:

> "ORS 60.952(5), which sets out a procedure for a court-ordered share purchase, codified how Oregon case law had arrived at providing fair value compensation. First, subsection (5)(a)(A) provides that, when ordering a share purchase, the court must '[d]etermine the fair value of the shares *** taking into account any impact on the value of the shares resulting from the actions giving rise to a

proceeding under subsection (1) of this section[.]' Thus, the share purchase requires that 'fair value' be paid, a principle that had previously been developed in Oregon law, *see, e.g., Hayes*[, 173 Or App 259]; *Cooke*, 169 Or App at 115, and which, it suffices to say, is a determination that accommodates the interests of both the buyer and seller, the controlling shareholder and the minority shareholder."

As reflected in *Columbia Management Co.* and in *Hayes*, the circumstances of oppression or other misconduct *is* a matter "resulting from the actions giving rise to a proceeding" under ORS 60.952, and those circumstances *are* relevant to calculating fair value. Here, the court determined that defendants did not oppress plaintiffs. It also concluded that defendants did not breach any fiduciary duty to plaintiffs. Consistent with our standard of review, we cannot say that the record lacked any evidence to support those findings.

The trial court had the detailed report and testimony of Gilbert that evaluated the income, asset, and market approaches to the value of plaintiffs' GHP stock, and that explained why GHP was a closely-held corporation whose shares justified a marketability discount. The trial court did not have a valuation of plaintiffs' GHP shares from plaintiffs' experts. The court accepted Gilbert's assessment of value, including use of the marketability discount, concluding:

"In a case such as this, where there is no credible evidence of oppression, and there is evidence of the presence of both willing sellers (Plaintiffs) and willing buyers (GHP), Oregon law allows fair market value to be the major component in the Court's determination of fair value, and further allows appropriate discounts to be applied. *Columbia [Management] Co. v. Wyss*, 94 Or App 195, 199 (1989)."

Where, as here, a defendant in an ORS 60.952(1) proceeding elects to purchase the shares of the shareholder who filed the proceeding, the fair value of those shares will, in the absence of agreement, depend on the circumstances of each case. Evidence of fair market value is relevant to the question of fair value, and in the absence of oppression, the court may apply a marketability discount. The trial court did not err.

Affirmed.