Argued and submitted May 27, 2021, vacated and remanded November 30, 2022

Margarita YBARRA,
*Plaintiff-Appellant,*

*v.*

DOMINGUEZ FAMILY ENTERPRISES, INC.,
*Defendant-Respondent,*
*and*

Luis DOMINGUEZ, et al.,
*Defendants.*

Multnomah County Circuit Court
18CV02722; A171814

521 P3d 834

Plaintiff appeals a judgment providing that the fair value of plaintiff's 7.98 percent interest in Dominguez Family Enterprises, Inc. was $927,595, after applying minority and marketability discounts. She contends that the trial court erred in ruling that, absent a showing of oppression, "fair value" for purposes of ORS 60.952(6) means "fair market value," therefore requiring the application of those discounts to the value of her shares. *Held*: The trial court erred in concluding that marketability and minority discounts must be applied in determining fair value under ORS 60.952(6) unless the plaintiff proves oppression; rather, it is a case-specific determination. On remand, the court must determine whether, under the particular facts and circumstances of the case, it is appropriate to apply minority and/or marketability discounts in determining the fair value of plaintiff's shares.

Vacated and remanded.

Judith H. Matarazzo, Judge.

Matthew J. Kalmanson argued the cause for appellant. Also on the briefs were Janet M. Schroer and Hart Wagner LLP.

Nicholas A. Kampars argued the cause for respondent. Also on the brief were Wildwood Law Group LLC, Tim Cunningham, and Davis Wright Tremaine LLP.

Before Ortega, Presiding Judge, and Shorr, Judge, and Landau, Senior Judge.

SHORR, J.

Vacated and remanded.

**SHORR, J.**

When a shareholder of a closely held corporation brings a proceeding under ORS 60.952(1) alleging management or shareholder deadlock, corporate waste, or illegal, oppressive, or fraudulent conduct by those in control of the corporation, the corporation or other shareholders can elect to purchase the shares for their fair value. ORS 60.952(6); *see also Graydog Internet, Inc. v. Giller*, 362 Or 177, 195-98, 406 P3d 45 (2017) (describing history and policy underlying election provision). If the parties are unable to reach agreement on the share price and purchase terms, the court determines fair value, "taking into account any impact on the value of the shares resulting from the actions giving rise to [the proceeding]." ORS 60.952(6)(f); ORS 60.952(5)(a)(A).

In this case, the trial court determined, after applying marketability and minority discounts,[1] that the fair value of plaintiff's 7.98 percent interest in defendant Dominguez Family Enterprises, Inc. (DFE) was $927,595. The court then entered a judgment ordering DFE to pay that amount to plaintiff in $25,000 monthly installments. Plaintiff appeals, challenging the trial court's ruling that, absent a showing of oppression, "fair value" means "fair market value," therefore requiring the application of marketability and minority discounts to the value of her shares. As explained below, the disposition of this appeal is, in large part, controlled by our recent opinion in *Hill v. Gold*, 322 Or App 324, 519 P3d 543 (2022). Consistent with that case, we agree with plaintiff that the trial court here erred, and we vacate and remand for the court to determine the fair value of plaintiff's shares under the correct legal standard.

We provide a brief summary of the facts and procedural history as context for the reader; a detailed description is unnecessary and unwarranted in this case.

DFE is a closely held family corporation, founded in Hood River in 1986. Today, DFE manufactures and

---

[1] A marketability discount "reflects the illiquidity of the shares of a closely held corporation." *Columbia Management Co. v. Wyss*, 94 Or App 195, 203, 765 P2d 207 (1988), *rev den*, 307 Or 571 (1989). A minority discount "recognizes that controlling shares are worth more in the market than are noncontrolling shares." *Id.* at 204.

distributes tortilla chips, marketed under the name Juanita's. All of the 10 shareholders are children of DFE's founders. At the time of trial, defendant Luis Dominguez (Dominguez), the president of DFE, owned 83.636 shares, or 28 percent of DFE's outstanding shares. Each of the other shareholders, including plaintiff, owned 23.636 shares, or 7.98 percent of DFE's outstanding shares. All of the shareholders were employees of DFE and members of its board, except for plaintiff, who resigned her position in 2011.

In January 2018, plaintiff filed a complaint against DFE and the other shareholders, which included a claim under ORS 60.952(1) alleging "illegal, oppressive or fraudulent" acts, ORS 60.952(1)(b), and misapplication or waste of corporate assets, ORS 60.952(1)(d).[2] The oppression allegation was based on the following acts: (1) permitting DFE to loan large interest-free sums to other board members without adequate security and without adequate efforts to obtain repayment; (2) permitting DFE to loan large sums to a Washington company without adequate security and without adequate efforts to obtain repayment; (3) authorizing the creation of a new limited liability company, C&H RE Holdings, LLC, in which each shareholder except plaintiff is a member, to hold real properties purchased with company funds; and (4) restricting distributions, even though the company had retained earnings, while providing bonuses to the other shareholders.

Pursuant to ORS 60.952(6), DFE filed a notice of election to purchase plaintiff's shares for a total payment of $900,000.[3] Plaintiff did not respond; DFE thereafter filed a motion to stay the proceeding and for the court to conduct a fair value hearing.[4] ORS 60.952(6)(e), (f). The court granted the stay and allowed plaintiff's discovery requests limited to

---

[2] Plaintiff voluntarily dismissed her claims against the individual defendants prior to the fair value hearing.

[3] ORS 60.952(6) provides, in part:

"At any time within 90 days after the filing of a proceeding under [ORS 60.952(1)], or at such time determined by the court to be equitable, the corporation or one or more shareholders may elect to purchase all of the shares owned by the shareholder who filed the proceeding for their fair value."

[4] ORS 60.952(6)(e) establishes that parties have 30 days after the filing of an election to negotiate an agreement as to fair value and terms of purchase. Then,

a copy of DFE's general ledger for the years 2015, 2016, and 2017; complete information on rental income and expenses relating to properties held by C&H RE Holdings, LLC; and information on the disposition of any net rental income from properties held by C&H RE Holdings, LLC, including any cash held by that company. It also allowed the corporate deposition of Dominguez "limited to discovery of matters related to [plaintiff's] claim that bonuses paid to the shareholder employees were in the nature of dividends." The court further ruled, on DFE's motion, that plaintiff's direct and derivative claims, as alleged in the complaint, were "subsumed within her claim for oppression, waste, and fraud under ORS 60.952(1)" and that any impact on the value of plaintiff's shares resulting from the actions that gave rise to the ORS 60.952(1) proceeding would be taken into account in determining the fair value of plaintiff's shares.

At the fair value hearing, plaintiff argued that "discounts for lack of marketability or for lack of control shall not be applied to determine fair value" for purposes of ORS 60.952(6). DFE, on the other hand, took the position that, "[w]here a company elects to purchase a shareholder's shares in response to a lawsuit such as this, when the plaintiff cannot prove oppressive conduct, the application of both [marketability and minority] discounts is appropriate." As the trial court later described it, "DFE's trial position was that 'fair value,' as opposed to 'fair market value,' should only be applied when oppression of a minority shareholder is established and that when no oppression is shown discounts for marketability or minority should be applied."

Three witnesses testified: Linebarger, plaintiff's valuation expert; Sickler, DFE's valuation expert; and Dominguez. Linebarger's analysis focused on the "income"

"[i]f the parties are unable to reach an agreement *** the court, upon application of any party, shall stay the proceeding [initiated under ORS 60.952(1)] and shall, under [ORS 60.952(5)], determine the fair value and terms of purchase of the shares of the shareholder who filed the proceeding as of the day before the date on which the proceeding was filed or as of such other date as the court deems appropriate under the circumstances."

ORS 60.952(6)(f). In turn, ORS 60.952(5)(a)(A) provides that "the court shall *** [d]etermine the fair value of the shares, with or without the assistance of appraisers, taking into account any impact on the value of the shares resulting from the actions giving rise to a proceeding under [ORS 60.952(1).]"

approach to business valuation; she calculated the value of plaintiff's 7.98 percent interest in DFE at $2,252,000, applying no discounts. Sickler based his opinion on fair market value—meaning "the hypothetical value between a hypothetical buyer and a hypothetical seller. The price that would be paid between those two parties." Sickler's "valuation opinion" of plaintiff's interest was $836,000, after applying both minority and marketability discounts.[5]

In its findings of fact and conclusions of law, the court held that "to justify the exclusion of discounts the plaintiff must demonstrate oppressive conduct," explaining that it was required to consider, as part of fair value, "'any impact on the value of the shares resulting from the actions giving rise to' plaintiff's claim" (quoting ORS 60.952(5)(a)(A)). Finding based on the evidence presented and the applicable case law that none of the conduct plaintiff alleged in her complaint was oppressive, the court thus concluded that marketability and minority discounts applied.

Using Sickler's method of analysis with two adjustments, the court determined that the fair value of plaintiff's interest in DFE was $927,595, which included a marketability discount of 27 percent and a minority discount of 26 percent (applied to nonoperating assets).[6] It thereafter entered a general judgment and money award consistent with that determination, setting out payment and interest terms, and ordering plaintiff to relinquish her shares to DFE.

On appeal, plaintiff raises a single assignment of error, specifically, that "[t]he trial court erred when it ruled that, absent a showing of oppression, 'fair value' means 'fair market value,' and then applied minority and marketability discounts to the value of plaintiff's shares." She argues that the legislature, in enacting ORS 60.952, intended to incorporate the meaning of "fair value" from then existing case law—in her view, "the proportionate interest in

---

[5] According to both experts, a valuation opinion involves a more in-depth analysis than a calculation of value, which is what Linebarger provided.

[6] The court found, among other things, that Sickler provided a more complete evaluation than Linebarger, he was able to interview DFE management and its accountant, and Sickler's estimate of ongoing capital expenditures and company-specific risk was more reliable than Linebarger's estimation of those two factors.

the corporation as a going concern, without application of minority or marketability discounts." In short, in plaintiff's view (1) the court erred in ruling that it was *required* to apply the discounts in the absence of oppression and (2) minority or marketability discounts are *never* appropriate in determining fair value under ORS 60.952. Plaintiff thus requests that we vacate the judgment and remand for the trial court to enter a judgment in her favor for the undiscounted value of her shares.

In response—and in an apparent change of tack from below—DFE argues that the court *may*, unless it finds oppression, apply minority and/or marketability discounts in determining "fair value" under ORS 60.952 if the court decides that it is appropriate to do so after considering all of the relevant facts and circumstances of the individual case.[7] And, according to DFE, that is what the trial court did here, so there is no error.

In *Hill*, we confronted substantially the same question, at least in part: whether it was appropriate for the court to apply a marketability discount to the value of the plaintiff's shares when determining "fair value" under ORS 60.952 after an election and in the absence of an agreement of the parties as to value.[8] 322 Or App at 333-36. In resolving that question, we concluded—based largely on earlier case law—that (1) the meaning of "fair value" for purposes of ORS 60.952 depends on the particular circumstances presented in the case, *id.* at 333-34 (citing *Columbia Management Co. v. Wyss*, 94 Or App 195, 199, 202, 765 P2d 207 (1988), *rev den*, 307 Or 571 (1989)); (2) oppression is a circumstance relevant to the determination of fair value, *id.* at 335-36 (citing *Columbia Management Co.*, 94 Or App at 197, 203, and *Hayes v. Olmstead & Associates, Inc.*, 173 Or App 259, 276, 21 P3d 178, *rev den*, 333 Or 73 (2001)); (3) application of a marketability discount is not permitted where there is a finding of oppression, *id.* at 334-35 (citing *Chiles v. Robertson*, 94 Or App 604, 643-44, 767 P2d 903, *adh'd to*

---

[7] DFE agrees that application of discounts is not appropriate if the plaintiff establishes oppression.

[8] The appropriateness of applying a minority discount was not at issue in *Hill*. *See* 322 Or App at 333 n 6.

*as modified on recons*, 96 Or App 658, 774 P2d 500, *rev den*, 308 Or 592 (1989), and *Cooke v. Fresh Express Foods Corp.*, 169 Or App 101, 115, 7 P3d 717 (2000)); but (4) in the absence of a finding of oppression, the court may, but need not, apply a marketability discount, depending on the particular circumstances of the case, *id.* at 336.[9]

In *Hill*, as noted, we did not directly address the propriety of applying a minority discount in the fair value determination under ORS 60.952(6), because the trial court had not done so. However, consistent with our approach in that case,[10] we now conclude that the same legal principles generally apply—that is, application of a minority discount is a case-specific determination; oppression is a relevant circumstance; application of a minority discount is not appropriate if oppression is found; and, in the absence of such a finding, the discount *may* be appropriate.[11] *See Hill*, 322 Or App at 333-34 (explaining that cases determining "fair value" under dissenter's rights statute inform the meaning of "fair value" for purposes of ORS 60.952(5)); *Columbia Management Co.*, 94 Or App at 202 (holding, in context of dissenter's rights statute, that appropriateness of applying marketability *or* minority discount to determination of fair value "necessarily depends on the circumstances of the particular case"); *see also Chiles*, 94 Or App at 643-44 (neither a minority nor a marketability discount is appropriate in determining the fair value of the stock of a minority shareholder who is the victim of oppressive conduct).

However, as was the case in *Columbia Management Co.*, courts should use caution in applying a minority discount

---

[9] We ultimately concluded in *Hill* that, under the circumstances of that case—which included the trial court's finding, supported by the evidence, that there was no oppression or other breach of fiduciary duty—the trial court did not err in applying a marketability discount when determining the fair value of the plaintiff's shares. 322 Or App at 336. We therefore affirmed.

[10] *See Hickey v. Hickey*, 269 Or App 258, 270, 344 P3d 512, *rev den*, 357 Or 415 (2015) (explaining that "the legislative history [of ORS 60.952] suggests an intention to provide statutory remedies to address instances of oppression and other misconduct in close corporations and *to reflect or codify remedies that Oregon courts had previously recognized and granted*"; in other words, ORS 60.952 "was enacted to reflect [existing] judicial practice" (emphasis added)).

[11] We note also that the parties themselves do not suggest that a different analysis applies with respect to the application of marketability versus minority discounts.

to the determination of fair value under ORS 60.952; depending on the circumstances of the case, application of a discount based on lack of control may not be appropriate. In *Columbia Management Co.*, we noted that recognition of the decreased value in the marketplace of noncontrolling shares versus controlling shares "*may* not be appropriate" when the purchaser of the shares will be the corporation, given that the corporation will not be in a minority position afterwards. 94 Or App at 204 (emphasis added); *see id.* at 204-05 (noting, among other cases, *Brown v. Allied Corrugated Box Co.*, 91 Cal App 3d 477, 154 Cal Rptr 170 (1979), in which the California court reasoned that, "when the corporation or someone already in control of it is the purchaser[,] one could not then say that the shares are worth less because they were noncontrolling" to illustrate the point that "[a] number of cases distinguish between marketability and minority discounts, approving the former and rejecting the latter").

In concluding in *Columbia Management Co.* that a minority discount was "not appropriate in the case," 94 Or App at 205, we also found it significant that application of a minority discount would subvert the legislative purpose of the dissenter's rights statutes[12]—to provide "a legislative remedy for minority shareholders who find their interests threatened by significant corporate changes and who may have no other recourse"—because it penalized the minority shareholder while providing a windfall for the majority, *id.* at 206.

The election remedy provided in ORS 60.952(6) has a different focus; nonetheless, similar considerations are appropriate in this context. As we have previously observed, the fair value determination under ORS 60.952 requires "consider[ation of] the interest of *both* the purchaser, usually the controlling shareholder, and the seller, usually the minority shareholder." *Hickey*, 269 Or App at 273 (emphasis added). And, as the Supreme Court explained in *Graydog Internet, Inc.*, in enacting the statutory election to purchase provision

---

[12] *Former* ORS 57.865 to 57.890, *repealed by* Or Laws 1987, ch 52, § 181. Those statutes were replaced by ORS 60.551 to 60.594, which continue to apply the term "fair value" in that context. *See Hill*, 322 Or App at 334 n 8 (so stating).

in ORS 60.952(6), the legislature recognized the need to be mindful of the interests of the minority shareholder:

> "The legislative history of ORS 60.952(6) shows that the legislature intended to discourage litigation between shareholders [in closely held corporations], with its potential for acrimony and harm to the firm and others, by providing an incentive for shareholders to resolve their disputes in some way other than a 'proceeding under subsection (1).' But it also recognized that the solution is imperfect because a shareholder's ownership stake may represent more than a solely financial investment, and a shareholder subject to a court-ordered sale of its shares for 'fair value' may be incompletely compensated for its loss."[13]

362 Or at 198. Thus, as in *Columbia Management Co.*, it may be inappropriate, depending on the circumstances, for the court to apply a minority discount to the determination of fair value under ORS 60.952(6).

Having thus set out the applicable legal principles, our resolution of this appeal is straightforward. But first we must address the parties' dispute over the nature of the trial court's holding, which is the key. In that respect, we agree with plaintiff. That is, we understand the trial court to have held that marketability and minority discounts are required in determining fair value under ORS 60.952(6) unless there is a finding of oppression. We reject DFE's contrary suggestion that the court did not so hold but instead merely concluded that it was appropriate, given the circumstances, to include the discounts in this case.

After observing that the calculation of fair value requires the court to consider "any impact on the value of the shares resulting from the actions giving rise to" plaintiff's claim, ORS 60.952(5)(a)(A), the court expressly stated, "The court holds that to justify the exclusion of discounts the plaintiff must demonstrate oppressive conduct." In

---

[13] The court explained that one of the "principal disadvantages" of a statutory election to purchase provision like that found in ORS 60.952(6) is that "a majority shareholder may use [it] to squeeze out a minority shareholder who wants to remain in the business" and "[p]roviding a minority shareholder in a close corporation with fair value for its shares may not adequately compensate shareholders faced with a squeeze-out, because shareholders in close corporations are more than mere lenders of capital with only an economic interest in the corporation." *Id.* at 197 (internal quotation marks and citations omitted).

other words, marketability and minority discounts must be applied unless the plaintiff proves oppressive conduct.

The court then applied that rule to the facts before it and concluded, having found no oppressive conduct, that it was appropriate to apply marketability and minority discounts—in other words, that marketability and minority discounts applied *because* there was no finding of oppression. The court referenced no other circumstances justifying the application of discounts.[14] Moreover, that understanding of the court's holding is entirely consistent with how the parties argued the case below. As the trial court explained in its findings of fact:

> "Plaintiff's trial position was that[] one of the detriments of effectuating the ORS 60.952(6) election to purchase is that the fair value ultimately determined will *not* include discounts for either lack of marketability or minority status. DFE's trial position was that 'fair value,' as opposed to 'fair market value,' should *only* be applied when oppression of a minority shareholder is established and that when no oppression is shown discounts for marketability or minority should be applied."

(Emphases added.) Considered in its entire context, the trial court's ruling can only be understood as concluding that marketability and minority discounts *must* be applied in the absence of a finding of oppression.

As explained above, that was error. However, we disagree with plaintiff that such discounts are *never* permitted. Rather, as discussed, the court must determine, based on all of the relevant facts and circumstances, whether to apply marketability and/or minority discounts in calculating the fair value of plaintiff's shares under ORS 60.952(6). Because the trial court mistakenly understood that its determination of fair value required the application of those discounts based on the absence of oppression alone, the court had no reason to consider whether the discounts were otherwise warranted in this case. Accordingly, we reject plaintiff's suggestion that we simply vacate and remand for the court to enter a judgment for the undiscounted value of her

---

[14] The court did, however, explain why the specific circumstances of the case justified the discount *rates* that it applied.

shares. On remand, the court must determine the fair value of plaintiff's shares under the standards set out above—that is, whether application of marketability and/or minority discounts are appropriate in the circumstances of the case.

Vacated and remanded.